IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

ESJ TOWERS, INC.
Debtor

CASE NO. 22-01676 (ESL)
CHAPTER 11

ESJ TOWERS, INC
Plaintiff

vs.

ADV. PROC. 25-00036

LUIS DANIEL MUÑIZ, and DE
ANGEL & COMPAÑÍA CPA, LLC
Defendants

FILED AND ENTERED 5/28/2026

OPINION AND ORDER

This adversary proceeding is before the court upon the *Motion to Dismiss the Amended Complaint at Dkt. No. [31] Pursuant to Fed. R. Civ. P. 12(b)(6) & for Term of Twenty (20) Days to File Final Application for Compensation nunc pro tunc* filed by codefendant Luis Daniel Muñiz ("Muñiz") on January 21, 2026 (the "*Motion to Dismiss*", dkt. #76) and the *Response* filed by the Official Committee of Unsecured Creditors (the "UCC" or the "Committee") of ESJ Towers, Inc. (the "Debtor"), on January 24, 2026 (the "*Response*", dkt. #82), as supplemented by the *Motion to Schedule Remote Case Management Conference* filed on May 3, 2026 (dkt. #135).

For the reasons stated herein, the *Motion to Dismiss* is hereby DENIED.

PROCEDURAL BACKGROUND

1. The Committee filed the instant adversary proceeding *Complaint* against Muñiz and De Angel & Compañía CPA, LLC ("DAC") on July 20, 2025 (dkt. #1). An *Amended Complaint* was subsequently filed on October 30, 2025 (dkt. #31).

2. The *Amended Complaint* includes two (2) counts related to Muñiz. In Count I, the Committee alleges that Muñiz was not allowed fees on a final basis and, thus, requests the court to enter an order requiring Muñiz to disgorge the full amount that he was paid by the Debtor ($73,500.00). See, dkt. #1, ¶¶49-51. Meanwhile, in Count II the Committee seeks to avoid the

-1-

$52,500.00 of allegedly unauthorized payments made to Muñiz by the Debtor between April 2023 and May 2024. See, dkt. #1, ¶¶52-54.

3.  The key allegations in the *Amended Complaint* related to Muñiz are the following:

20. On July 14, 2022, roughly a month after the Petition Date, the Debtor filed an application to employ [Muñiz] as special counsel for a wide variety of matters (the "Original Muñiz Application").

21. The Original Muñiz Application proposed to pay [Muñiz] a "retainer" of $3,500 per month for up to 30 hours of work, and $150.00 per hour for any work in excess of the 30 hours.

22. The United States Trustee as well as the HOA initially objected to the Muñiz Application on the grounds that [Muñiz]'s pre-petition work had included representing entities that were adverse to the Debtor on matters for which the Muñiz Application sought to employ him.

23. On January 27, 2023, after the Court had approved, but then vacated, [Muñiz]'s engagement, the Debtor filed a new motion to retain [Muñiz] as special counsel (the "Second Muñiz Application"), but with [Muñiz]'s proposed engagement now limited to "horizontal property and timeshare law[] matters."

24. Despite his substantially more limited role, the Second Muñiz Application proposed to pay [Muñiz] the same "retainer" as the original application.

25. After the HOA (but not the UST) renewed its objection to the renewed Muñiz Application, the Court granted it — on February 9, 2023 (the "Muñiz Order").

26. On March 3, 2023, less than a month after the Muñiz Order, [Muñiz] filed an interim fee application pursuant to section 331 of the Bankruptcy Code (the "Interim Muñiz Fee Application").

27. The Interim Muñiz Fee Application requested $21,000 — that is, $3,500 for six months of work from July 2022 through February 2023, but excluding December 2022 and January 2023.

28. The interim application misstated that [Muñiz] had filed his amended employment application in late August, not late January 2022.

29. [Muñiz] had billed a total of 78.75 hours during the six months for which he was requesting $21,000 (at $3,500 per month): July (16.25); August (16.5); September (19.5); October (8.5); November (8.5); and February (9.5).

30. Of the 78.75 hours for which [Muñiz] sought compensation, nearly 70 were worked during the period for which his services were not approved.

31. On April 3, 2023, when no one had objected to the Interim Muñiz Application, the Court entered an Order granting it (the "Interim Muñiz Fee Award").

32. On March 28, 2023, shortly after the Court entered the Interim Muñiz Award, the Debtor paid [Muñiz] $21,000 (the "Interim Muñiz Payment").

33. During the ensuing 14 months, through May 24, 2024, the Debtor paid [Muñiz] another $52,500, all without court approval (the "Unauthorized Muñiz Payments," and collectively with the "Interim Muñiz Payment," the "Total Muñiz Payments").

34. The dates and amounts of the Muñiz Payments are set forth in Exhibit A hereto, which is incorporated herein and made a part of this Amended Complaint for all purposes.

35. [Muñiz] did not file a final fee application before (or after) the Administrative Expense Claim Bar Date.

Dkt. #31, ¶¶20-35.

4.      After requesting multiple extensions of time to file a responsive pleading (dkt. #47, 57, 66), which were granted by the court (dkts. #48, 58, 67), on January 21, 2026, Muñiz filed the *Motion to Dismiss* (dkt. #76). The Committee filed the *Response* on January 24, 2026 (dkt. #82). Muñiz sought leave to file a reply to the *Response* (dkt. #94), which was granted by the court (dkt. #95). However, Muñiz did not file a reply.

5.      On May 26, 2026, the court entered a *Partial Judgment of Dismissal with Prejudice as to Defendant [DAC]* (dkt. #145) after DAC and the Committee entered into a *Settlement Agreement and Mutual Release* as to the Committee's claims against DAC. The Committee's claims against Muñiz remain pending.

-3-

POSITION OF THE PARTIES

*1. Muñiz' Position in the Motion to Dismiss*

Muñiz argues in the *Motion to Dismiss* "that the issues raised by the UCC in relation to the compensation received by the Defendant can be entertained with a final application for compensation Nunc Pro Tunc, that will be submitted for the consideration of the Court in the following 20 days. All parties in interest will have the opportunity to review said final Application for Compensation and file any objections if they understand it necessary." Dkt. #76, ¶3. Further, Muñiz posits that the Committee "failed to assert an actionable claim for relief" against him, "even when the non-conclusory allegations in the Amended Complain are assumed to be true". Dkt. #76, ¶18. Lastly, Muñiz argues that the filing of an adversary proceeding, "instead of filing an objection to the Final Fee Application for Compensation is the incorrect mechanism to entertain the matter before the [c]ourt". Dkt. #76, ¶21.

*2. The Committee's Position in the Response*

In the *Response*, the Committee states that "the motion nowhere argues that the Amended Complaint's allegations fail to provide [Muñiz] with notice of a substantively plausible claim. Nor does the motion attempt to explain why — even if the Bankruptcy Code or the Confirmed Plan would allow the Court to enter a *nunc pro tunc* fee award — [Muñiz] would qualify for such extraordinary relief here." Dkt. #82, p. 4.

In addition, in its *Motion to Schedule Remote Case Management Conference* (dkt. #135), the Committee states that as "it pertains to [Muñiz], the proceeding seeks the avoidance, recovery and disgorgement of a total of $73,500 that the Debtor paid [Muñiz] as the Debtor's court-approved special counsel, with [Muñiz] having received $52,500 of that amount without any court approval, and the other $21,000 through an interim, but not a final, fee award." Dkt. #135, ¶3. Therefore, the Committee alleges and concludes that, "in view of [Muñiz]'s (a) failure to file a fee application, (b) refusal to engage in meaningful settlement negotiations, (c) rejection of the Committee's request for his time records for the period for which he received $52,500, and (d) position that he will provide the Committee with none of the Debtor's records or of [Muñiz]'s

work product as the Debtor's counsel — rescheduling of the settlement conference, or the scheduling of any other hearings involving [Muñiz], would not be productive until the Court has had time to rule on the [Motion to Dismiss]." Dkt. #135, ¶14.

LEGAL STANDARD AND DISCUSSION

i.      Motions to Dismiss under Fed. R. Civ. P. 12(b)(6)

"The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to assess the legal feasibility of a complaint, not to weigh the evidence which the plaintiff offers or intends to offer." Velez-Arcay v. Banco Santander de P.R. (In re Velez-Arcay), 499 B.R. 225, 230 (Bankr. D.P.R. 2013), citing Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2nd Cir. 1984); Citibank, N.A. v. K-H Corp., 745 F. Supp. 899, 902 (S.D.N.Y. 1990).

Fed. R. Civ. P. 8(a)(2), applicable to adversary proceedings through Fed. R. Bankr. P. 7008, mandates that complaints contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "Although detailed factual allegations are not required, the Rule does call for sufficient factual matter". Surita-Acosta v. Reparto Saman Inc. (In re Surita-Acosta), 464 B.R. 86, 90 (Bankr. D.P.R. 2012). Therefore, to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, accepted as true, "state[s] a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 556, 127 S.Ct. 1955. The Twombly standard was further developed in Ashcroft v. Iqbal, 556 U.S. 622 (2009), advising lower courts that "determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. at 679. "In keeping with these principles, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity

and then determine whether they plausibly give rise to an entitlement to relief." Id. In sum, allegations in a complaint cannot be speculative and must cross "the line between the conclusory and the factual". Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011). "[A]n adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 11 (1st Cir. 2011).

In Schatz v. Republican State Leadership Committee, 669 F.3d 50, 55 (1st Cir. 2012), the U.S. Court of Appeals for the First Circuit established a two-step standard for motions to dismiss under Fed. R. Civ. P. 12(b)(6). Step one: isolate legal conclusions. Step two: take the complaint's well-pleaded (non-conclusory) allegations as true, drawing all reasonable inferences in favor of the plaintiff and determine if they plausibly narrate a claim for relief. Also see Pérez v. Rivera (In re Pérez), 2013 WL 1405747 at *3, 2013 Bankr. LEXIS 1561 (Bankr. D.P.R. 2013); Zavatsky v. O'Brien, 902 F. Supp. 2d 135, 140 (D. Mass. 2012); Guadalupe-Báez v. Pesquera, 819 F.3d 509, (1st Cir. 2016).

This court in Hotel Airport, Inc. v. Best W. Int'l Inc. (In re Hotel Airport, Inc.), 2014 WL 4661943 (Bankr. D.P.R. 2014) held that the court would not dismiss an adversary proceeding based solely on procedural grounds alone because that would elevate form over substance and increase the cost of litigation without benefitting either party.

ii.    *Discussion*

The court agrees with the Committee's position in the *Response*. The conclusory and unsupported allegations in the *Motion to Dismiss* do not adequately contest the well-plead allegations in the *Amended Complaint* as to the Committee's claims against Muñiz. In addition, as of this date and over four (4) months after the filing of the *Motion to Dismiss*, no final application for compensation has been filed by Muñiz. Moreover, contrary to Muñiz' assertion, an adversary proceeding, such as the instant case, is the proper method to recover the money allegedly paid improperly to Muñiz by the Debtor. See, Fed. R. Bankr. P. 7001(a).

CONCLUSION

In view of the foregoing, the *Motion to Dismiss* filed by Muñiz is hereby DENIED.

Consequently, a Pretrial Conference will be scheduled in a separate order.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 28th day of May 2026.

Enrique S. Lamoutte
United States Bankruptcy Judge